1 MELINDA HAAG (CABN 132612)
United States Attorney
2

BRIAN J. STRETCH (CABN 163973)
3 Chief, Criminal Division

4 WILLIAM FRENTZEN (LABN 24421)
BENJAMIN TOLKOFF (NYBN 4294443)
5 Assistant United States Attorney

6     450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
7     Telephone: (415) 436-6959
Facsimile: (415) 436-6753
8     E-mail: william.frentzen@usdoj.gov

9 Attorneys for Plaintiff

10                  UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13

14 UNITED STATES OF AMERICA,   )    No. CR 10-0453 RS
                        )
15           Plaintiff,    )    [~~PROPOSED~~]
                        )    **ORDER OF DETENTION**
16    v.               )    **PENDING TRIAL**
                        )
17 JOSEPH RUIZ,           )
                        )
18          Defendant.   )
                        )
19

20     This matter came before the Court on August 31, 2010, on a motion by the government to

21 detain defendant Ruiz. Defendant Ruiz was present and represented by Mikal Condon, Esq.

22 Assistant United States Attorney William Frentzen appeared for the government.

23     The government moved for detention, and defendant opposed detention. Proffers and

24 arguments regarding detention were submitted by the parties at the hearing and the Court and

25 parties had the benefit of the report and recommendation of Pretrial Services.

26     Upon consideration of the facts, proffers and arguments presented, the Court finds by

1    clear and convincing evidence that no condition or combination of conditions of release will

2    reasonably assure the safety of other persons and the community.  Accordingly, the Court

3    concludes that defendant must be detained pending trial in this matter.

4         The present order supplements the Court's findings at the detention hearing and serves as

5    written findings of fact and a statement of reasons as required by 18 U.S.C. § 3142(i)(1).

6         At the hearing, the government made a factual proffer regarding the facts of the case.

7    According to that proffer, on March 10, 2010, at approximately 4:53 p.m. San Francisco Police

8    Department officers were patrolling near 1839 Sunnydale Avenue, San Francisco, California.

9    This location is within the Sunnydale Housing Development.  The officers approached that

10    location and heard a radio call for shots fired.  Officers looked toward where they heard shooting

11    was reported and saw an individual, Kevin Lobo, firing an assault pistol towards a crowd of

12    people on Sunnydale Avenue.  The officers observed defendant Lobo fire 3 to 4 shots in that

13    manner, then fire an additional 2 shots straight up in the air.  The officers drove closer, then

14    exited their vehicle.  Lobo half turned and saw the officers, then turned back and began running

15    west.

16         Officers pursued and saw Lobo stop and stand with the assault pistol in his right hand.

17    After being ordered to drop the firearm, Lobo dropped the assault pistol on the ground.

18    Defendant Lobo was then arrested.  Search of the area revealed multiple shell casings of both .25

19    caliber and 9mm caliber.  Lobo's assault pistol was 9mm caliber.

20         While officers were taking Lobo into custody, defendant Ruiz approached with several

21    other people behind him.  The people following Ruiz were swearing at him.  Ruiz was ordered

22    by the police to move away from Lobo.  While on the scene, officers received information from

23    witness(es) that Ruiz was also firing a gun prior to anyone else firing a weapon and that Ruiz and

24    another individual were shooting at each other in front of inhabited dwellings and close to a

25    recreational center within Sunnydale.  The .25 caliber shell casings were found in the area where

26    Ruiz was seen shooting.  Ruiz was detained on the scene.  An officer could see a knife sticking

2

1   out of Ruiz's pants pocket.  Upon pat down of Ruiz, the officer felt two objects consistent with

2   marijuana in baggies.  Upon searching, the officer recovered two baggies of suspected

3   marijuana.

4       Ruiz was identified as coming and going from 1815 Sunnydale Avenue.  Officers

5   knocked on that door and Teresa Puente, mother of Joseph Ruiz, answered the door.  Ms. Puente

6   gave police permission to search and signed a consent form.  Upon search of the residence,

7   officers found in an upstairs bedroom closet 29 rounds of Remington .25 caliber ammunition in

8   an ammunition box which holds 50 rounds.  In the same room, officers also found a small

9   amount of cocaine powder and an empty gun case.  On top of the refrigerator in the kitchen of

10  the residence, police found another empty gun case.

11      Lobo was transported to Ingleside Station where he was given *Miranda* warnings and

12  agreed to talk.  In substance, Lobo stated that he was a Norteno who was visiting his friend,

13  Joseph Ruiz.  Lobo stated that he heard an argument and gunshots and then ran outside.  As he

14  ran outside, he was handed the assault pistol by an unknown black male.  He then admitted only

15  to firing straight up in the air with the assault pistol.

16      Ruiz was also transported to Ingleside Station.  He was given *Miranda* warnings and

17  agreed to talk.  In substance, Ruiz admitted that the marijuana found on his person as well as the

18  ammunition and cocaine in his room were his.  Ruiz stated that he had purchased the ammunition

19  and that he had previously owned a firearm.  Ruiz admitted to possession of the empty gun cases

20  as well.  Ruiz claimed that he didn't know anything about anyone shooting that day.  The

21  ammunition found in Ruiz's bedroom is .25 caliber Remington, the same as the two shell casings

22  found on the ground where the witness(es) stated that Ruiz was shooting.

23      Both defendants had previously been convicted of felony offenses on that day.

24  Additionally, defendant Ruiz had previously been convicted of a misdemeanor crime of domestic

25  violence on that day.  Neither the Vulcan firearm nor the Remington ammunition was

26  manufactured in California.

1   The Court makes the following findings as basis for its conclusion that no condition or
2   combination of conditions will reasonably assure the safety of other persons and the community
3   as to defendant Ruiz.  First, the Court considers the facts of the instant case in its determination
4   regarding detention, although those facts are the least important consideration of each of the
5   factors.  Title 18 U.S.C. § 3142(g)(1) provides that among the factors the Court should consider
6   are "the nature and circumstances of the offense charged, including whether the offense is a
7   crime of violence . . . or involves a . . . firearm . . . ."  According to the government's proffer, on
8   March 10, 2010, San Francisco Police Department officers located .25 caliber ammunition and
9   two empty gun cases at the defendant's residence.  At the time that the ammunition was located,
10  defendant was a convicted felon.  Defendant was interviewed by SFPD and admitted that he
11  possessed the ammunition.  There is also evidence that the defendant fired the ammunition in an
12  unlocated firearm in a residential area.  Therefore, the instant case involves a dangerous matter
13  and involves a firearm.

14  Additionally, 18 U.S.C. § 3142(g)(2) provides for the Court to consider "the weight of
15  the evidence against the person."  At this point, the government's proffer is strong.  While the
16  defendant is entitled to the presumption of innocense, the weight of the evidence as proffered by
17  the government appears compelling for now.

18  Title 18 U.S.C. § 3142(g)(3) provides for the Court to consider the history and
19  characteristics of the person, including "the person's character, physical and mental condition,
20  family ties, employment, financial resources, length of residence in the community, community
21  ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record
22  concerning appearance at court proceedings; and whether, at the time of the current offense or
23  arrest, the person was on probation, on parole, or on other release pending trial, sentencing,
24  appeal, or completion of sentence for an offense under Federal, State, or local law."

25  In this case, defendant certainly has ties to the community and is a lifelong San Francisco
26  resident.  Other factors, however, weigh heavily for detention.  Defendant had previously been

4

1   convicted of a crime of violence.  He was convicted of Inflicting Corporal Injury on

2   Spouse/Cohabitant in San Francisco Superior Court in 2000 as a misdemeanor offense.  He was

3   convicted of Inflicting Corporal Injury on Spouse/Cohabitant in San Francisco Superior Court in

4   2003 as a felon.  Defendant has multiple DUI arrests with one conviction.  Defendant has had his

5   probation revoked and/or modified on multiple occasions, showing a poor ability to comply with

6   conditions.  Defendant has also had multiple bench warrants issued for him.  Defendant claims a

7   long history of drug and alcohol abuse, as well as some indication of mental issues related to an

8   attempted suicide.

9           While the Court could set certain conditions to try to make the community safe,

10  defendant has previously ignored the conditions of his probation on multiple occasions, as

11  demonstrated by his modifications and revocations of probation.  Defendant has also had

12  difficulty appearing in the past which has resulted in bench warrants being issued, which

13  demonstrates that he not amenable to following Court instructions.  While defendant's family

14  members are to be commended for their support of defendant Ruiz and appearing in court on his

15  behalf, they also cannot guarantee defendant's compliance and appearance.  The ammunition and

16  the empty gun cases found in defendant's bedroom and on top of the refrigerator – along with

17  personal use narcotics – were reportedly found in his mother's house.  From that, it would appear

18  that defendant does not necessarily comply with his family's requests of him.

19          Title 18 U.S.C. § 3142(g)(4) provides that the Court consider "the nature and seriousness

20  of the danger to any person or the community that would be posed by the person's release."

21  Here, defendant is a person previously convicted of violent acts who is now charged with

22  possessing ammunition related to a shoot-out in a residential neighborhood.  Thus, defendant

23  presents a serious danger to the community.

24          For these reasons, the Court finds through clear and convincing evidence that defendant

25  Ruiz presents a risk of danger to other persons and the community that cannot be mitigated

26  adequately by conditions of release.

1 | \\\

2        Accordingly, pursuant to 18 U.S.C. § 3142(i), IT IS HEREBY ORDERED THAT:

3        1.     Defendant be, and hereby is, committed to the custody of the Attorney General

4 for confinement in a corrections facility separate, to the extent practicable, from persons

5 awaiting or serving sentences or being held in custody pending appeal;

6        2.     Defendant be afforded reasonable opportunity for private consultation with his

7 counsel; and

8        3.     On order of a court of the United States or on request of an attorney for the

9 government, the person in charge of the corrections facility in which defendant is confined shall

10 deliver defendants to an authorized deputy United States marshal for the purpose of any

11 appearance in connection with a court proceeding.

12        SO ORDERED.

13

14 Dated: September _15_, 2010

                                        *Elijah D. Laporte*

15                                HONORABLE ELIZABETH D. LAPORTE
                               United States Magistrate Judge
                               Northern District of California

16

17

18

19

20

21

22

23

24

25

26